**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| MELISSA TEMPLE,<br><br>                  Plaintiff,<br><br>   vs.<br><br>LOWER ELKHORN NATURAL RESOURCES DISTRICT,<br><br>               Defendant. | CASE NO. ____<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, DAMAGES, AND DECLARATORY RELIEF**<br><br>**(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1.     Melissa Temple is an elected Board Member of the Lower Elkhorn Natural Resources District (LENRD). She brings this action against the LENRD to challenge its unconstitutional sanctions on her in retaliation for her protected speech.

2.     Earlier this year, Temple submitted an internal complaint to the LENRD's Chairman and general manager reporting a series of inappropriate incidents in which another Board Member interrupted and spoke condescendingly to speakers during public comment, dismissed public health concerns affecting women, and belittled Temple's intelligence at a public Board meeting.

3.     Temple also spoke publicly about her colleague's misogynistic behavior with the Norfolk Daily News. She told the paper that she filed the complaint to "hold our board to a higher standard of ethics, professionalism, and accountability." "I want us to abide by our code of decorum and promote a culture of civility and respect where no one is intimidated or belittled for offering their ideas or opinions."

4.     The Board of the LENRD disagreed with Temple's sentiments, so it passed a resolution sanctioning her for "failing to serve as a model of leadership and civility." In a letter describing the sanctions, the Chairman of the LENRD, Roger Gustafson, admonished Temple for exercising her free speech rights, writing "your

decision to share the details of your complaint with the public during the course of the investigation, including allegations of misogyny, was in very poor judgment and damaged the reputation of the District."

5.      The sanctions imposed on Temple are swift and severe. Because of her speech, Temple has been removed from all subcommittees for a period of one year; stripped of all out-of-district travel reimbursements until August 2024; and publicly reprimanded for speaking on matters of critical importance to her constituents.

6.      The LENRD's retaliatory sanctions hinder Temple's ability to serve as a fully functioning Board Member. As a result, Temple cannot effectively represent her constituents' interests through membership on powerful subcommittees or in trainings and networking events outside of the district. Because the sanctions violate Temple's constitutional rights under the First, Fifth, and Fourteenth Amendments, and the actions of the Board violated the Nebraska Open Meetings Act, Temple is entitled to immediate relief.

## PARTIES

7.      Melissa Temple is a resident of the City of Norfolk in Madison County, Nebraska, and a democratically elected Director of the LENRD. Temple taught in Norfolk, Nebraska for five years, co-founded a local anti-human trafficking nonprofit, and currently owns and operates an online tutoring and learning intervention service for students with autism.

8.      The LENRD is a Natural Resources District (NRD) that serves fifteen counties in northeast Nebraska. The LENRD is a political subdivision established by the Legislature to conserve, protect, develop, and manage natural resources. The LENRD is governed by a fifteen-member elected Board of Directors (the Board).

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 because it involves a federal question under 42 U.S.C. § 1983.

10.     Venue is proper under 28 U.S.C. § 1391 because the defendant resides in Nebraska and the challenged conduct occurred entirely within Nebraska.

## FACTUAL ALLEGATIONS

### A. Temple was elected to the LENRD.

11.     Temple ran for election to the LENRD for Subdistrict # 3, which covers the eastern half of the City of Norfolk, in 2022.

12.     She campaigned on several issues facing the LENRD, including addressing high concentrations of agrichemicals, such as nitrates, in drinking water, drought response, enhancing educational conservation programs for youth, responsibly stewarding the District's financial and natural resources, and government accountability and transparency on the LENRD Board.

13.     Temple won her race with more than twice as many votes as her opponent. She was elected to a four-year term and was sworn into office in 2023.

14.     Since her election to the Board, Temple has been an outspoken and zealous advocate for her constituents. Consistent with her campaign platform, Temple regularly speaks on issues of conservation and preservation, protecting lives through safe drinking water and flood management, groundwater management, the importance of recreational parks and educational programs for youth, and the proper operation of the LENRD, including the avoidance of conflicts of interest.

### B. Temple submits an internal complaint regarding inappropriate behavior by another LENRD Director.

15.     Within the first four months of serving on the LENRD Board, Temple witnessed and was informed about a "disturbing pattern of disrespect" by LENRD Director Scott Clausen. Temple believed Clausen's behavior was inconsistent with the LENRD's Bylaws and Rules of Decorum.

16.     Temple was particularly concerned that Clausen's conduct at public meetings would damage the LENRD's relationships with the local community by discouraging public comment and participation at meetings.

17.     Prompted by these concerns and others, Temple and others informed Chairman Gustafson about a lack of proper decorum at Board meetings. Gustafson sent an email to all LENRD Directors expressing his hope that this behavior would

improve and asking that all Directors listen respectfully during future public comments.

18.     But Gustafson's email fell on deaf ears. At the next scheduled Board meeting, LENRD Directors heard public comment regarding flood control efforts in a nearby community. One of the public speakers was the vice president and general manager of a steel producer that maintains facilities in the area and is one of the City of Norfolk's largest employers.

19.     Director Clausen repeatedly interrupted and spoke condescendingly to the public commenter to "correct" her and state his own opinions.

20.     Clausen's behavior toward the executive was inconsistent with Chairman Gustafson's email and in direct violation of the LENRD's Bylaws, which afford speakers the "privilege of making an appropriate presentation without interruption."

21.     In another incident, Temple was informed that Clausen made derogatory remarks about Temple in the presence of other LENRD Directors and staff during a public Board meeting. As Temple was speaking to the Board about forming a committee to address a personnel issue, Clausen told his colleagues that Temple was "not smart enough to be on the committee."

22.     Temple was also informed that during a presentation on the public health impacts of nitrates in water, Clausen commented, "Why are we concerned with this, it's just affecting women and children."

23.     Temple spoke with the general manager of the LENRD about restoring decorum to public Board meetings. Consistent with the manager's advice, and in conformance with the LENRD's Bylaws, Temple submitted a formal complaint to Chairman Gustafson. A copy of Temple's complaint is attached as Exhibit A.

**C. Temple speaks to the media.**

24.     After Temple's complaint was submitted, and while the investigation was ongoing, the LENRD received a public records request from the Norfolk Daily News. Upon information and belief, the newspaper requested several years of

information pertaining to formal and informal complaints filed by LENRD Board members and employees and the hiring process for a general manager.

25.     The LENRD produced a copy of Temple's internal complaint to the Norfolk Daily News in response to its public records request.

26.     Armed with a copy of her complaint, a reporter with the newspaper contacted Temple for public comment.

27.     In a written statement to the reporter, Temple confirmed the internal complaint and reiterated her commitment to accountability and transparency. Without mentioning Clausen by name, Temple commented:

> I harbor no personal ill will or hurt feelings over the matter. I have three postgraduate degrees and I am quite confident in my intellectual aptitude to perform the duties and functions of my elected office. I filed a complaint to hold our board to a higher standard of ethics, professionalism and accountability. I want us to abide by our code of decorum and promote a culture of civility and respect where no one is intimidated or belittled for offering their ideas or opinions.

28.     Temple further stated that the district deserves a Board that "listens and communicates respectfully to each other and our constituents."

29.     Temple's comments to the news reporter were made in her personal capacity and not on behalf of the LENRD.

30.     The Norfolk Daily News published the story regarding Temple's complaint on May 2, 2023. In addition to Temple's statement, the story includes several quotes from Director Clausen, who was the subject of Temple's internal complaint. The May 2 Article is attached as Exhibit B.

31.     Soon after the article was published, Temple received a letter from Chairman Gustafson on LENRD letterhead regarding the status of her internal complaint. The letter informed Temple that the LENRD's Executive Committee of the Board "conclude[d] that the allegations contained in [Temple's] Complaint are inconclusive" because eyewitness accounts were in conflict.

32.     In other words, the LENRD decided to close Temple's complaint without taking any formal disciplinary actions because it could not confirm or deny Temple's allegations of misconduct.

33.     Despite the inconclusive finding, Chairman Gustafson thanked Temple for submitting her complaint, noting that the complaint and investigation "serve as reminders to all Board members that we must be mindful of what and how we communicate with one another as representatives of our District."

**D. Clausen submits a complaint against Temple.**

34.     Clausen was not happy about the allegations contained in Temple's complaint or her comments to the Norfolk Daily News. So, on June 7, 2023, Clausen submitted his own complaint against Temple.

35.     Clausen claimed that Temple's allegations against him were false and that the public records request that resulted in media coverage of Temple's complaint was a "ploy" to get "Melissa Temple's article" in the newspaper. He also accused Temple of defaming him in the press and threatened litigation if Temple was not removed from the Board.

36.     At the time of this complaint, Temple had served on the Board for just over four months. No other complaint has ever been made against her.

37.     The LENRD began investigating Clausen's allegations. During this process, the LENRD released a statement to the press regarding the status of Temple's complaint, which it had previously closed. In the press statement, Chairman Gustafson stated that the LENRD's Executive Committee of the Board "found no violation of the Code of Decorum" and, therefore, that no action would be taken.

38.     The press release was inconsistent with the internal letter that Gustafson sent to Temple regarding the results of her complaint. Whereas Gustafson informed Temple that her allegations were "inconclusive," he informed the press that the allegations were without merit.

39.     The press release prompted additional interest from the media. So, after confirming with LENRD's counsel that she could speak with the media, Temple issued a public comment. This time Temple was more resolute.

40.     In her public comment, Temple highlighted the discrepancies between the LENRD's internal findings and its press release. She also expressed her frustrations with the internal investigation process, which she believed was biased and unfair. And Temple told the newspaper that, as a result of the LENRD's conduct, others may not choose to hold elected officials accountable due to possible retaliation.

41.     Temple further stated, "I continue to stand by my statement and encourage others to hold those in leadership positions accountable for their words and deeds regardless of the outcome. One of the campaign promises I made to my constituents was to insist on Board accountability and transparency." A copy of the June 27, 2023, article which published Temple's comments is attached as Exhibit C.

**E. The LENRD validates Clausen's complaint and imposes unconstitutional sanctions on Temple.**

42.     On or about July 24, 2023, Chairman Gustafson issued a letter to Temple regarding the Executive Committee's conclusions on Clausen's internal complaint. A copy of the letter is attached as Exhibit D.

43.     The letter concludes that Temple "violated the District's Code of Decorum by failing to serve as a model of leadership and civility" because the "decision to share the details of [her] complaint with the public during the course of the investigation, including accusations of misogyny, was in very poor judgment and damaged the reputation of the District." The letter continues,

> A demonstration of proper leadership and civility would have been to contact me or members of the Executive Board, to schedule a meeting between yourself and Director Clausen. The Executive Board or I could have served as a mediator, to honestly but confidentially, air your concerns and resolve any differences. This approach could have led to a quick resolution of the issues without the risk of damaging reputations or creating discord within the Board. In the alternative, and at a minimum, you should have declined any public comment on

the matter until the investigation had been completed. Unfortunately you did neither.

44.    In other words, Chairman Gustafson and the Executive Committee determined Temple violated the Code of Decorum by (1) submitting a complaint and (2) discussing the complaint with the public, including by providing comments to the press.

45.    As a result of her purported violations, Chairman Gustafson stated that the Executive Committee would recommend the following sanctions: (1) public reprimand, (2) removal from all subcommittees for one year, (3) suspension of the right to make motions for one year, and (4) no reimbursement for LENRD-related travel expenses for one year. Gustafson stated Temple would have an opportunity to speak on the proposed sanctions.

46.    The LENRD Board was scheduled to vote on the proposed sanctions outlined in Chairman Gustafson's letter on July 27, 2023. The vote, however, was tabled due to concerns about insufficient notice under the Open Meetings Act. The vote was moved to a special meeting scheduled for August 10, 2023.

47.    At the time the special meeting was scheduled, a majority of LENRD Directors knew that Temple would be out of the country and unable to attend. Nevertheless, the group proceeded with the August 10 date despite Temple's express request to move the meeting to September.

48.    Gustafson also ignored Temple's separate request to meet with the Executive Committee and her written objection to the Board entering a closed session to discuss the proposed sanctions.

49.    The special meeting proceeded on August 10 as scheduled. Because Temple was out of the country, her counsel attended the meeting on her behalf. Counsel's attendance at the Board meeting was not an adequate substitute for Temple having an opportunity to attend the meeting and be heard.

50.    Over 60 members of the public also attended the meeting in support of Temple. Many of them spoke or submitted letters urging the Board not to sanction

Temple and expressing concerns regarding how the sanctions would limit Temple's ability to represent them.

51.     After Temple's counsel and members of the public addressed the Board, and over Temple's prior objections, the Board of Directors went into a closed session to discuss the complaint and proposed sanctions against Temple.

52.     After coming out of closed session, the LENRD Board of Directors adopted a resolution which approved the following sanctions against Temple, (1) public reprimand, (2) removal from all subcommittees for one year, and (3) no reimbursement for out-of-district travel expenses for one year. The resolution was approved on a vote of 10 to 3.

53.     Like Temple, Director Clausen submitted an internal complaint to the LENRD and spoke to members of the press about the process. Also, like Temple, Clausen did not attempt to resolve his complaint informally before filing it or speaking to the media. Yet Clausen has not been reprimanded, disciplined, or sanctioned for his conduct.

54.     The LENRD has made far more significant determinations regarding the conduct of its elected Directors. In one incident, the Board determined that a Director violated the groundwater allocations set by the LENRD. In another, a Director was found to have sexually harassed an employee by spreading false rumors. But to this day, Temple is the only LENRD Director ever to have been publicly sanctioned for a violation of the Bylaws or Code of Decorum.

**F. The LENRD improperly removed Temple from all subcommittees.**

55.     LENRD is governed by a Board of fifteen elected Directors. There are regular meetings of the Board twice per month.

56.     But a significant amount of LENRD business is performed through standing and ad hoc subcommittees. The Budget Committee, for example, is a standing subcommittee that prepares the LENRD's annual budget. The Finance Committee reviews and approves all LENRD expenses.

57.    There are other subcommittees that address more discrete issues and policy priorities. For example, there was a Drought Response Committee that determined the effects the drought had on water shortages and worked to establish new irrigation limits. There is a North Fork Elkhorn River Watershed Plan Consultant Selection Committee that selects consultants and develops a flood prevention plan for a nearby community. And there is a Variance Committee that meets regularly to discuss irrigation issues such as groundwater levels, drought management, and rising nitrate levels in Nebraska's drinking water.

58.    Generally, any Director can request the chairperson form an ad hoc subcommittee to address a particular issue. When a subcommittee is formed, up to 7 Directors can serve.

59.    LENRD subcommittees are significant and powerful because they help facilitate issues or proposals that come before them will be voted on by the full Board of the LENRD. Similarly, subcommittees can recommend that the full Board place an item on the official agenda for a Board meeting. Subcommittees also prepare the motions voted on by the full Board.

60.    Under the LENRD Bylaws, subcommittee members are appointed by the chairperson of the Board of Directors or the chairperson of a particular subcommittee. As a matter of practice, membership on a subcommittee of LENRD is on a volunteer basis. When an ad hoc subcommittee is formed, the chairperson requests volunteers to serve on the subcommittee.

61.    For example, when the North Fork Watershed Committee was formed on July 27, 2023, Chairman Gustafson requested volunteers to serve on the subcommittee. He placed the five Directors who raised their hand to volunteer to serve on the subcommittee, including Temple.

62.    Before the August 10, 2023, sanctions, Temple was placed on every subcommittee for which she volunteered.

63.    Temple is not aware of any instance in which a Director who volunteered for a subcommittee was denied that placement.

64.     Service on LENRD subcommittees is critical to Temple effectively representing her constituents. Various issues Temple campaigned on are addressed by subcommittees—including rising nitrate levels, managing water usage during a drought, and conservative fiscal management—and those subcommittees determine which actions will be considered by the full Board.

65.     Directors who are not on a particular subcommittee are not given the same information and data considered by the subcommittee in making recommendations to the full Board.

66.     At the time LENRD sanctioned her, Temple served on the Finance Committee, the Budget Committee, the Northeast Nebraska RC&D Committee, and the North Fork Elkhorn River Watershed Plan Consultant Selection Committee.

67.     Since the sanctions against Temple took effect in August, the LENRD has formed a Variance Committee to address irrigation limits, groundwater usage related to the drought and declining static water levels, and the public health effects of new irrigation wells in areas with high levels of nitrates. As with other LENRD subcommittees, membership on the Variance Committee was determined on an entirely volunteer basis.

68.     Temple would have volunteered for the Variance Committee had the LENRD not sanctioned her for her speech.

69.     Temple also would have also requested that the chairperson form and that she serve on a subcommittee on youth conservation education—a request she cannot make in light of the LENRD's August 10 sanctions.

70.     Because the LENRD operates through subcommittees, the Board's decision to remove Temple from all subcommittees for one year materially interferes with her ability to effectively represent her constituents and perform her elected duties. This sanction deprives Temple of her authority as a duly elected official and dilutes the voice and power of her constituents.

**G. The LENRD improperly revoked Temple's statutory right to receive reimbursements.**

71.    In addition to removing her from subcommittees, the LENRD stripped Temple of all Director-related travel reimbursements for out-of-district travel. This decision was made despite a Nebraska statute that expressly requires such reimbursements for elected officials like Temple.

72.    Specifically, Neb. Rev. Stat. § 2-3218 provides that all NRD Board Members "***shall*** be reimbursed for their actual and necessary expenses incurred in connection with their duties." This includes travel costs for mileage, airfare, ground transportation, parking, conference registration, meals, and hotel accommodations for NRD-related travel. The annual limit for reimbursement is $3,000.

73.    In addition, state statute permits the LENRD to provide a separate per diem payment for each day a Director attends meetings of the Board or is engaged in matters concerning the District, not to exceed $3,600 per year. Consistent with this option, the LENRD provides Directors a per diem of up to $3,600 per year.

74.    To date, Temple has received a total per diem of $1,935 and total reimbursements of $913.70 for 2023.

75.    Because the LENRD has stripped Temple of all out-of-district travel reimbursements, she is not able to attend critical meetings and conferences— including out-of-district meetings that are required to take place by state statute. This is detrimental to Temple and her constituents because, among other ways, out-of-district meetings and trainings provide elected Directors the opportunity to meet with state and federal agencies and shape NRD-related policy.

76.    For example, there are legislative conferences each year at which NRD Directors from various districts vote on whether the Nebraska Association of Resources Districts (NARD) will support or oppose legislative bills related to natural resources. During the 2023 legislative conference, NRD Directors, including Temple, voted on and adopted an official NARD position on 41 bills and 3 resolutions.

77.    Before Temple was sanctioned, she attended multiple out-of-district and out-of-state meetings, conferences, workshops, seminars, and trainings. Several other

trainings and professional development opportunities will occur between now and the expiration of Temple's sanctions next year:

- In November, the National Water Resource Association is hosting its Annual Leadership Conference in San Antonio, Texas. Later that month, the Joint Convention of the Nebraska Water Resources Association and the Nebraska State Irrigation Association is hosting a meeting in Kearney, Nebraska.

- In October and January, there is Groundwater Modeling Training in Lincoln, Nebraska.

- In January, the Nebraska Natural Resource District Legislative Conference is in Lincoln, Nebraska. During this conference, NRD Directors can vote on their position on legislative bills for the upcoming legislative session. There is another conference in January hosted by the Groundwater Management Districts Association in Nashville, Tennessee.

- In February, the National Association of Conservation Districts is hosting a meeting in San Diego, California.

- In April, the National Association of Resource Districts is hosting a meeting in Washington, D.C. at which NRD Directors can meet with elected officials on Capitol Hill.

- In June, the University of Nebraska will host a Water Tour.

- In July, the Groundwater Management Districts Association is hosting its summer conference at an out-of-state location to be announced.

78.    If not for the sanctions against her, Temple would attend as many of these opportunities as possible within the annual reimbursement limit of $3,000. Without reimbursement for the cost, however, Temple cannot afford to participate in many of the conferences, trainings, and meetings described above, particularly the meetings taking place out of Nebraska.

79.    For events that she does attend, Temple will be forced to cover the cost personally, without any reimbursement, unlike the other Directors of LENRD or other public officials throughout Nebraska.

80.     Temple attended the Nebraska Natural Resource Districts Annual Conference from September 24 to 26, 2023, in Kearney, Nebraska. She incurred at least $285 of expenses which are reimbursable under Nebraska law and which Temple would submit for reimbursement if not for the sanctions.

## FIRST CAUSE OF ACTION
### Unlawful Retaliation for Free Speech in Violation of the First Amendment of the U.S. Constitution (through 42 U.S.C. § 1983)

81.      Temple re-alleges and incorporates by reference the preceding paragraphs.

82.     Temple engaged in activity protected by the First Amendment by, among other ways, filing an internal complaint with the LENRD and speaking to members of the public, including the news media about a matter of public concern.

83.     The LENRD retaliated against Temple for this activity by voting to impose sanctions against her for a period of one year.

84.     The sanctions strip Temple of the privileges of public office by removing her from all subcommittees and revoking her statutory right to reimbursement.

85.     The sanctions against Temple prevent her from doing her job; deny her privileges of elected office; and would chill a person of ordinary firmness from continuing to engage in protected speech.

86.     The motivating reason for the sanctions against Temple was her protected speech.

## SECOND CAUSE OF ACTION
### Violation of the Freedom of Association under the First and Fourteenth Amendments (through 42 U.S.C. § 1983)

87.     Temple re-alleges and incorporates by reference the preceding paragraphs.

88.     The LENRD violated Temple's right to association by restricting her participation as an elected official and retaliating against her for an association with a member of the press.

89.     The LENRD sanctions restrict Temple's participation as an elected official in subcommittee meetings and other LENRD-related business requiring out-of-district travel and restrain her interaction with other Board Members.

90.     Further, the LENRD retaliated against Temple for her expressive association with the press and burdened her associational rights by sanctioning her for providing comments to the press.

91.     The sanctions against Temple would chill a person of ordinary firmness from associating with the press.

92.     Temple's speech, including providing comments to the press, was the motivating reason for the sanctions.

## THIRD CAUSE OF ACTION

### Violations of the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments (through 42 U.S.C. § 1983)

93.     Temple re-alleges and incorporates by reference the preceding paragraphs.

94.     The LENRD enforced its Bylaws against Temple in an arbitrary, inconsistent, and discriminatory manner.

95.     The disparate and discriminatory treatment of Temple from the other LENRD Directors—by prohibiting only Temple from serving on LENRD subcommittees and obtaining statutorily guaranteed reimbursement—violates Temple's Equal Protection rights as guaranteed by the Constitution.

96.     The disparate and discriminatory treatment of Temple for exercising her First Amendment rights compared to similarly situated LENRD Board Members, including Clausen, violates Temple's Equal Protection rights as guaranteed by the Constitution.

97.     Under Nebraska law, Temple has a property interest in reimbursement for actual and necessary expenses incurred in connection with her duties as a Director of LENRD.

98.     Temple was not afforded adequate pre-deprivation procedures by the LENRD Board in suspending her statutory right to reimbursement.

99.     Temple was not provided any information regarding the evidence the Executive Committee relied on to find she violated the Code of Decorum nor was she permitted to meet with the Executive Committee regarding their decision as she requested.

100.    Temple was not provided any meaningful opportunity to be heard by the LENRD Board before it voted to sanction her.

101.    LENRD intentionally scheduled its meeting to discuss and vote on sanctions against Temple when Temple would be out of the country.

102.    The LENRD Board rejected a motion to table the sanctions until Temple would be able to attend and voted to approve the sanctions without providing Temple an opportunity to be heard.

## FOURTH CAUSE OF ACTION

### Violation of the Nebraska Open Meetings Act

103.    Temple re-alleges and incorporates by reference the preceding paragraphs.

104.    The LENRD is a public body and its meetings are subject to the Nebraska Open Meetings Act, Neb. Rev. Stat. §§ 84-1407 *et seq*.

105.    The closed session exception for prevention of needless injury to the reputation of an individual does not permit a public body to enter closed session for the protection of the Board of Directors or other governmental officers of that body.

106.    On August 10, 2023, a LENRD Director moved to enter a closed session to protect the reputation of an individual.

107.    The motion was approved by the majority of the LENRD Board.

108.    The only item to be discussed during the closed session was the decorum complaint against Temple and the proposed sanctions.

109.    Temple requested the meeting stay in open session.

110.    LENRD violated the Nebraska Open Meetings Act by discussing the decorum complaint and proposed sanctions during a closed session.

111.    This action has been commenced within 120 days of the public meeting at which the violation of the Open Meetings Act occurred.

## REQUEST FOR RELIEF

Temple requests this Court grant:

112.    A declaration that LENRD's sanctions against Melissa Temple violate the First Amendment and the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the United States Constitution;

113.    A declaration that the actions taken at the August 10, 2023, special meeting of the LENRD Board of Directors are void pursuant to the Nebraska Open Meetings Act.

114.    A preliminary and permanent injunction barring Defendant from enforcing or threatening to enforce the sanctions adopted by LENRD Board resolution on or about August 10, 2023, against Plaintiff Melissa Temple;

115.    Nominal damages in an amount to be determined by a jury at trial;

116.    Economic damages that have accrued to date;

117.    Punitive damages in an amount to be determined by a jury at trial;

118.    Plaintiff's attorney fees and costs under 42 U.S.C. § 1988;

119.    Plaintiff's attorney fees and costs under Neb. Rev. Stat. § 84-1414; and

120.    Such other and further relief as the Court deems just.

## JURY TRIAL DEMAND

121.    Temple requests a trial by jury for all issues so triable and that the trial be held in Lincoln, Lancaster County, Nebraska

DATED this 17th day of October, 2023.

                                       */s/ Daniel J. Gutman*
                                       Daniel J. Gutman, #26039
                                       Sydney L. Hayes #27051
                                       University of Nebraska College of Law
                                       First Amendment Clinic
                                       Schmid Clinic Building
                                       P.O. Box 830902
                                       Lincoln, NE 68583-0902
                                       dgutman2@unl.edu
                                       shayes6@unl.edu
                                       ATTORNEYS FOR PLAINTIFF
                                       MELISSA TEMPLE