IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MELISSA TEMPLE,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>LOWER ELKHORN NATURAL<br>RESOURCES DISTRICT,<br><br>　　　　　　　Defendant. | 4:23-CV-3198<br><br>MEMORANDUM AND ORDER |

　　　This matter is before the Court on the motion for a preliminary injunction filed by the plaintiff, Melissa Temple, against the defendant, the Lower Elkhorn Natural Resource District (LENRD). Filing 3. The Court convened a hearing on December 8, 2023, where the parties adduced evidence in open court.

　　　The LENRD sanctioned Temple after she spoke to a local newspaper regarding a complaint she filed with the general manager and executive committee of the LENRD against another board member. The LENRD stripped Temple of her ability to receive reimbursements for out-of-district travel, and suspended her from all committee assignments, both sanctions to last one year. As relevant to her request for a preliminary injunction, Temple alleges that sanctions imposed by the LENRD at an August 10, 2023, special board meeting infringe on her First and Fourteenth Amendment freedoms of speech and association. *See* filing 4.

I. BACKGROUND

　　　The LENRD is a public entity charged with conserving, protecting, developing, and managing the natural resources of the state. Neb. Rev. Stat. §§ 2-3201, 2-3229. The state has outlined the powers and responsibilities of the LENRD, including, as relevant to this case:

- The LENRD is responsible for, *inter alia*, flood protection, groundwater management, soil erosion, and water quality management;
- The LENRD is governed by a board of directors, elected to four-year terms, and the LENRD elects its executive officers;
- Board members are unpaid, except through reimbursements or, in the discretion of the LENRD, per diems; and
- The board may adopt and promulgate rules and regulations to carry out authorized purposes.

*See* Neb. Rev. Stat. §§ 2-3213, 2-3217, 2-3218, 2-3228, 2-3234, 2-3252. The LENRD has adopted bylaws, by which it manages its statutory responsibilities. Filing 24-4. The bylaws contain a code of decorum and provide that unspecified sanctions may be executed if board members, members of the public, or staff do not adhere to that code. Filing 24-4 at 8.

Temple was elected to the LENRD in November 2022 and assumed her four-year term in January 2023. Temple lives in Norfolk, Nebraska, where she is a part-time tutor for students with disabilities and a chaplain for hospice patients. Filing 32 at 14. She represents Subdistrict 3, which covers the eastern half of Norfolk. The LENRD is the first political body for which Temple has served, and she is currently in her first year in office.

In April 2023, Temple filed a complaint against a fellow board member, Scott Clausen, alleging that he made a "degrading comment" about her fitness to serve on the LENRD at a public meeting. Filing 1-1 at 1. Temple also asserted that Clausen had "shown a consistent pattern of misogynistic, inappropriate, and offensive behavior while on the LENRD board." Filing 1-1 at 2. Temple requested that the board's executive committee "initiate board sanctions and censorship against Mr. Clausen for his egregious violation of our Bylaws and blatant disregard of our Code of Decorum." Filing 1-1 at 1. The executive committee

ultimately closed Temple's complaint against Clausen without any disciplinary action.

Temple and Clausen both provided statements to the Norfolk Daily News, which reported on Temple's complaint in early May. Filing 1-2. After the first news article was published, Clausen filed a complaint of his own against Temple. Filing 5-1 at 20. After her complaint was dismissed, Temple again provided a comment to the Norfolk Daily News. Filing 5-1 at 23. The executive committee determined that Temple "violated the District's Code of Decorum by failing to serve as a model of leadership and civility." Filing 5-1 at 25. The committee elaborated: "While you were within your rights to file your complaint against Director Clausen, your decision to share the details of your complaint with the public during the course of the investigation, including accusations of misogyny, was in very poor judgment and damaged the reputation of the District." *Id.*

The committee recommended that the LENRD impose sanctions against Temple. Filing 5-1 at 26. The LENRD implemented some of the committee's recommendations at a special board meeting on August 10, 2023. The LENRD voted to issue a public reprimand, remove Temple from her subcommittees for one year, and suspend her travel reimbursements for out-of-district travel for one year. *See* filing 5-1 at 5; Amended Minutes of LENRD Special Board of Directors Meeting (Aug. 10, 2023), http://www.lenrd.org/s/2023-08-Amended-Special-Board-Minutes.pdf (last accessed Dec. 27, 2023). Since the LENRD imposed the sanctions, Temple has also been informed she will not receive per diems for out-of-district events, and she was asked to refund hotel and registration fees for a conference in Kearney, Nebraska, that she previously was told would be paid for by the LENRD. Filing 22-4 at 2; filing 22-6 at 5.

3

1. REIMBURSEMENTS

State law requires NRDs to reimburse board members "for their actual and necessary expenses incurred in connection with their duties." § 2-3218. The LENRD bylaws indicate that the executive committee must approve any reimbursement for out-of-district travel. Filing 24-4 at 2. The LENRD bylaws further impose a $3,000 cap on reimbursements, requiring executive committee approval to exceed that cap. *Id.*; filing 24-3 at 1. The LENRD has also chosen to provide per diems to its members up to the statutory limit—$3,600. *See* filing 24-4 at 2; § 2-3218.

Temple testified that the reimbursements enabled her to attend trainings and conferences which she would not be able to afford otherwise. Filing 32 at 25. Temple testified that as a result of the sanctions, she will not be able to attend the annual legislative conference hosted by the Nebraska Association of Resources Districts (NARD)[1] in Lincoln. Filing 32 at 27. At the legislative conference, NRD board members in attendance are asked to vote on the NARD's lobbying priorities during the Nebraska legislative session. Filing 32 at 20. Temple also testified that travel expenses for the NARD conferences have historically been distributed without approval from the executive committee, despite the provision in the bylaws. Filing 32 at 39. Brian Buckner, the LENRD's general manager, corroborated Temple's testimony. Filing 32 at 61-62.

Temple testified that she worked on a LENRD project regarding nitrate contamination which involved three different NRDs, and her participation in that project required her to travel out of district. Filing 32 at 16. She also asserted that she uses reimbursements to become more familiar with the subject areas the

---

[1] The NARD is a trade organization organized under the Interlocal Cooperation Act, Neb. Rev. Stat. § 13-801 *et seq.*, to assist the twenty-three different NRDs in collaborating. *See* Neb. Rev. Stat. § 2-3228; http://www.nrdnet.org.

4

LENRD governs. *Id.* Buckner testified that several trainings for board members and NRD staff are available remotely, through both live and prerecorded webinars. Filing 32 at 70.

### 2. SUBCOMMITTEES

Like other political bodies, the LENRD conducts some business by committee. The LENRD's subcommittees are authorized only to "research, advise, and recommend to the Board in matters assigned them as responsibilities." *See* filing 24-4 at 5. Buckner provided that subcommittees are "advisory only and have no authority to make policy, adopt rules or regulations, hire staff, enter contracts, or authorize expenditure of LENRD funds." Filing 24-1 at 3. Temple testified that the subcommittees would discuss various measures and would vote to recommend whether a motion should be presented to the whole board. A board member may introduce a motion before the board even if a subcommittee votes not to bring that issue forward. Before the sanctions removed her from them, Temple served on two standing committees and two ad hoc committees. Filing 5-1 at 5.

### II. DISCUSSION

In determining whether to grant a preliminary injunction, the Court must consider the factors set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Those factors include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 114. No single factor is dispositive, and the burden is on the movant to establish the propriety of the remedy. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). If a claimant has shown a likely violation of her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally also satisfied. *See Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam), *vacated on reh'g on other grounds*, 705 F.3d 845 (8th Cir. 2012); *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chicago*, 56 F.4th 437, 450-51 (7th Cir. 2022).

### 1. LIKELIHOOD OF SUCCESS ON THE MERITS

The First Amendment prohibits government officials from subjecting individuals to retaliatory actions for having engaged in protected speech. *Aldridge v. City of St. Louis,* 75 F.4th 895, 898 (8th Cir. 2023) (quoting *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022)). This is true even for individuals who are members of an elected body subject to retaliation from other members of that body. *See Wilson*, 595 U.S. at 474; *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022).[2] To prevail on her claim of First Amendment retaliation, Temple must show that she engaged in protected First Amendment activity; that

---

[2] The LENRD asserts that the "law allows elected bodies to discipline their members for violations of their codes of conduct without judicial intervention." Filing 23 at 10. According to the LENRD, *any* sanction imposed on a member would be outside the scope of judicial review. But the *Wilson* court examined a "purely verbal censure" in the framework described above. 595 U.S. at 477. The Supreme Court made clear that its "narrow" decision rested on whether the purely verbal censure was materially adverse. *Id.* at 474, 477. The history and tradition examined by the Court focused on a purely verbal censure. *Id.* To the extent the LENRD appears to argue that Temple's claim presents a nonjusticiable political question (*see* filing 34 at 2), that is contrary to the Supreme Court's analysis in *Wilson*. This Court will follow the Supreme Court's clear framework for examining a First Amendment retaliation claim brought by an elected official against the body of which she is a member.

6

she suffered an adverse action that would chill a person of ordinary firmness from continuing in the protected activity; and that the adverse action was taken because of her protected speech. *Aldridge*, 75 F.4th at 898-99; *Wilson*, 595 U.S. at 477.

The First and Fourteenth Amendments also prevent the government from infringing on an elected official's freedom of association and a voter's right to be represented by their elected official. *Lee v. Driscoll*, 871 F.3d 581, 585 (8th Cir. 2017) (citing *Peeper v. Callaway Cnty. Ambulance Dist.*, 122 F.3d 619, 623 (8th Cir. 1997)). To succeed on this claim, Temple must show that the LENRD sanctions restrict her ability to perform her duties and that the restrictions are not rationally related to a legitimate state interest. *Id.*

(a) First Amendment Retaliation

The parties do not contest that Temple's statements to the Norfolk Daily News were protected by the First Amendment. *See* filing 23 at 14; filing 12 at 3. And while the LENRD tries to characterize its sanctions as being caused by Temple's "poor judgment" and "lack of decorum," it is clear by the terms of the letter recommending sanctions that the executive board wanted to punish Temple for speaking to a local newspaper about Clausen. *See* filing 5-1 at 25. The parties do not meaningfully dispute that the LENRD sanctioned Temple because of her protected statements to a local newspaper.

So, as explained in this Court's earlier order (filing 16), the dispositive issue is whether Temple suffered a "materially adverse action" which would chill a person of ordinary firmness in her position from engaging in future First Amendment activity. *Aldridge*, 75 F.4th at 899; *Boquist*, 32 F.4th at 775; *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023); *but see Wilson*, 595 U.S. at 477-78 (an action may be material if it would chill a person of ordinary firmness,

7

*or* if it "adversely affected the plaintiff's . . . protected speech" (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000))).

An action is materially adverse when it prevents an elected official from doing her job or otherwise prevents her from enjoying the benefits and privileges that accompany her public office. *Boquist*, 32 F.4th at 775 (citing *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010)); *Wilson*, 595 U.S. at 479 ("the censure did not prevent Mr. Wilson from doing his job, [and] it did not deny him of any privilege of office"). De minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim. *Boquist*, 32 F.4th at 776 (quoting *Blair*, 608 F.3d at 545); *cf. Peeper*, 122 F.3d at 623 (citing *Clements v. Fashing*, 457 U.S. 957, 971-72 (1982)). And Temple, an elected official, is expected to shoulder "a degree of criticism" about her public service from her peers. *Wilson*, 595 U.S. at 478.

History and tradition further inform whether a particular sanction is material or not. *See Wilson*, 595 U.S. at 475; *Boquist*, 32 F.4th at 775. If a sanction is a common form of discipline imposed by a political body on its own members, that sanction is unlikely to chill a person in Temple's position from engaging in future First Amendment activity. *See Wilson*, 595 U.S. at 477.

*(i) Suspension of Reimbursements and Per Diem*

One benefit of Temple's office is her statutory right to reimbursement for "actual and necessary expenses." Neb. Rev. Stat. § 2-3218. The LENRD argues that Temple has no entitlement to reimbursements for out-of-district travel because the LENRD's bylaws require such payments to be approved by the executive committee. *E.g.,* filing 12 at 8. But the LENRD has not convincingly argued that its bylaws supersede clear statutory language—Temple is indeed entitled to reimbursements of her actual and necessary expenses. The LENRD only has the power to disapprove *unnecessary* out-of-district travel expenses

under the statute, and is not possessed with unfettered discretion by its own bylaws. *Compare* § 2-3218, *with* filing 24-4 at 2.

The LENRD appears to argue that Temple's out-of-district travel is unnecessary, but a prohibition on *all* out-of-district travel clearly includes travel which would be "necessary" by the terms of the statute. Temple sufficiently demonstrated that her LENRD responsibilities require her to travel out-of-district. *E.g.*, filing 32 at 15, 39. The scope of the sanction is overly broad and contrary to Nebraska law. A public entity that can ignore statutory entitlements in the name of "decorum" would chill a person in Temple's position from engaging in protected First Amendment activity. The LENRD's sanction involving out-of-district reimbursements is materially adverse.

Temple also asserts that denying her per diems for her out-of-district responsibilities is a materially adverse action.[3] The statute only permits, and does not mandate, per diems. Neb. Rev. Stat. § 2-3218. But the LENRD has chosen to provide per diems to its members. Filing 24-4 at 2. This is the only compensation which Temple earns for her role as a director. When Temple attends out-of-district trainings, she must take unpaid time off from her day jobs. She has been receiving the per diems for her necessary travel since she took office,

---

[3] The LENRD's resolution imposing sanctions did not include suspending her per diems for out-of-district work. *See* filing 5-1 at 5; Amended Minutes of LENRD Special Board of Directors Meeting, http://www.lenrd.org/s/2023-08-Amended-Special-Board-Minutes.pdf (last accessed Dec. 27, 2023). The idea that the LENRD can adjust how it enacts the sanctions against Temple at will is chilling: How can Temple know what sort of consequences she might face as a result of the *currently imposed sanctions* if she engages in further protected First Amendment activity? The discretion the LENRD utilizes in enforcing its sanctions is likely to chill a person of ordinary firmness from engaging in protected speech. *Cf. Lewis v. Wilson,* 253 F.3d 1077, 1080 (8th Cir. 2001) (citing *Forsyth Cnty. v. Nationalist Movement,* 505 U.S. 123, 129 (1992)); *Bennie v. Munn,* 822 F.3d 392, 399 (8th Cir. 2016).

and a person in Temple's position would be chilled from engaging in future First Amendment activity due to this sanction. *Cf. Wilson v. Miller*, 821 F.3d 963, 968 (8th Cir. 2016). It is a materially adverse action to strip Temple of those payments because of her speech.

History and tradition indicate that the government cannot suspend the pay of an elected official as a sanction. Such an action is clearly materially adverse. Based on evidence provided by both parties—*see* filing 24-5 at 3; filing 22-1; filing 22-2 at 3—revoking Temple's right to per diem and reimbursement payments is "sufficiently egregious" to support her First Amendment claim. *See Scheffler v. Molin*, 743 F.3d 619, 622 (8th Cir. 2014) (quoting *Naucke v. City of Park Hills*, 284 F.3d 924, 928 (8th Cir. 2002)); *Wilson*, 595 U.S. at 475.

For these reasons, Temple has demonstrated a likelihood of success on the merits of her First Amendment retaliation case as it pertains to the sanctions regarding per diem and reimbursement payments. A person of ordinary firmness in Temple's position would be chilled from engaging in future First Amendment activity if her compensation was suspended.

### (ii) Removal from Committees

Temple asserts that the sanctions impacting her ability to sit on a committee are materially adverse. But unlike suspending an elected official's compensation, removing elected officials from committee assignments is a common sanction. *See, e.g., Whitener v. McWatters*, 112 F.3d 740, 745 (4th Cir. 1997) (quoting *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994)); H.R. Res. 76, 118th Cong. (2023). The LENRD's subcommittees, like committees of other political bodies, are advisory in nature and do not unconstitutionally impede Temple's ability to govern.

Temple provided an affidavit from Paul Zillig, an employee of another NRD for 44 years. Zillig provided that the only censure he witnessed during his tenure

10

was when a board member was removed from a committee because of an inappropriate comment. Filing 22-1. This only helps demonstrate that removing officials from committees is not offensive to the First Amendment. *See Wilson*, 595 U.S. at 477. The removal is not materially adverse.

Temple may still vote on all matters brought to the LENRD. She may engage in discussions and represent her constituents' interests. Subcommittees are entirely voluntary and, unlike reimbursements or per diems which occur by statute, only exist by the bylaws and customs of the LENRD. Removing Temple from her subcommittee assignments is not a materially adverse action because it is a common sanction employed by political bodies and because it does not infringe on the benefits and privileges of her office, and a person in Temple's position would not be chilled from future First Amendment activity.

It does not offend the Constitution to limit Temple's ability to sit on subcommittees. The LENRD may constitutionally execute this sanction . . . now, whether it *should do so* in the district's best interest is a *separate question* to be considered by the political body and by the district's voters.

(b) Freedom of Association

Temple also argues that the LENRD's sanctions infringe on her First Amendment freedom of association rights. "[R]estrictions on an elected official's ability to perform her duties implicate the interests of two distinct parties: the individual's First Amendment associational rights . . . and the voters' rights to be meaningfully represented by their elected officials." *Peeper*, 122 F.3d at 623. The LENRD's sanctions will stand if they are rationally related to a legitimate state interest. *Id.* Legitimate state interests may warrant restrictions that are de minimis limitations of the official's participation. *Id.*

The restrictions imposed on the officeholder in *Peeper* were not sanctions for any purported wrongdoing. The plaintiff was elected to an ambulance district

11

board of directors, and her husband was an emergency medical technician and employee of the district. *Id.* at 620. The board believed the plaintiff's relationship with her husband presented an unacceptable conflict of interest and specter of corruption. The board voted to exclude her from certain employment decisions. This case is distinguishable because the LENRD is exercising its inherent powers to manage its own members and Temple's exclusion comes from a sanction, not from a perceived conflict of interest.

For the reasons explained above, Temple's removal from subcommittees is a de minimis limitation on her board participation. *Peeper*, 122 F.3d at 623. None of her voting rights are implicated by that sanction, and the sanction is rationally related to the LENRD's interest in maintaining decorum. However, also for the reasons explained above, the suspension of Temple's right to receive reimbursements for out-of-district travel materially affects her ability to perform her duties for her constituents. The sanction is not rationally related to a legitimate interest because it is not rational that a political body could suspend a statutory entitlement, even if managing decorum is a legitimate interest.

## 2. IRREPARABLE HARM

A preliminary injunction can't issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). And harm isn't irreparable when a party can be fully compensated for its injuries by an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009).

Here, Temple cannot be fully compensated for her injuries. Temple is not paid for her LENRD duties, and, without statutory reimbursements, she must

pay for necessary expenses out of her own pocket. But, as she credibly testified, she can't afford to do that. Without a preliminary injunction, Temple will be unable to attend meetings, projects, and other events which are necessary for her representation of her constituents. Temple has identified specific events which she would attend if she could receive reimbursements. This is not the type of harm that can be resolved with damages.

And, there is irreparable harm due to the sanction's chilling effect. *See Int'l Ass'n Of Fire Fighters*, 56 F.4th at 450-51. If Temple continues to engage in protected speech, such as informing the press of how the sanctions are affecting her ability to govern, she might be subject to further sanctions. Temple's right to publicly criticize the LENRD's decision is enshrined by the First Amendment. *See Wilson*, 595 U.S. at 478 ("In this country, we expect elected representatives to shoulder a degree of criticism about their public service from. . . their peers"). Temple has credibly asserted that her speech is chilled by the LENRD's decision to revoke her right to receive reimbursements. The irreparable harm requirement is therefore satisfied.

### 3. BALANCE OF HARMS

The Court must also consider the balance of harms between the parties. *See Dataphase*, 640 F.2d at 114. Because a temporary restraining order is an extraordinary remedy never awarded as of right, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter v. Nat. Res. Defense Council, Inc.,* 555 U.S. 7, 24 (2008).

It is unclear how the LENRD would be harmed by paying Temple reimbursements to which she is statutorily entitled and per diems the LENRD previously paid her, and which Temple would otherwise receive. The statute and the LENRD bylaws limit such payments to approximately $6,600, for which the

13

LENRD has already budgeted. *See* filing 24-4 at 2; Neb Rev. Stat. § 2-3218. On the other hand, Temple, and her constituents, are the ones suffering due to her inability to attend workshops, conferences, and out-of-district LENRD projects.

The LENRD argues that an injunction would "erode public confidence in the elective process since the decision to censure [Temple] was made in open session of a public meeting." Filing 12 at 12. Frankly, this whole ordeal has the potential to erode public confidence in the LENRD's ability to govern. The LENRD simply does not have the power, under Nebraska law and the United States Constitution, to withhold Temple's reimbursement and per diem payments. The balance of harms therefore weighs in favor of issuing a preliminary injunction.

### 4. PUBLIC INTEREST

Finally, the Court must consider the public interest. *See Dataphase*, 640 F.2d at 114. As a first-year member of the LENRD with no previous governmental experience, the public—particularly the public residing in the eastern part of Norfolk—is served when Temple is able to attend trainings and programming relevant to her representation. Temple has convincingly provided that she cannot attend such trainings without the reimbursement or per diem payments. The public interest factor weighs in favor of granting the preliminary injunction.

### III. CONCLUSION

The Court has resolved the issues presented at this stage of the proceedings. What the parties must resolve is how they are going to move forward and govern together in 2024. As the calendar turns to a new year in a few days, *now is a good time* for the parties to determine how they will get along and govern in the best interests of the public.

Accordingly,

14

IT IS ORDERED:

1. The plaintiff's motion for a preliminary injunction (filing 3) is granted in part.

2. The Lower Elkhorn Natural Resource District is preliminarily enjoined from enforcing the August 10, 2023, sanction suspending Temple's rights under Neb. Rev. Stat. § 2-3218.

Dated this 27nd day of December, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge